James Phillip CLEARY, Plaintiff,

v.

Richard R. ANDERSEN et al.,
Defendants.

Civ. No. 75-0-400.

United States District Court,
D. Nebraska.

Nov. 19, 1976.

Michael L. Lazer, Marer & Lazer, Omaha, Neb., for plaintiff.

James E. Fellows, Deputy City Atty., Omaha, Neb., for defendants Richard R. Andersen, Roy J. Wilson and Timothy G. Mead.

Henry L. Wendt, Deputy County Atty., Douglas County, Omaha, Neb., for defendant Jerome Merwald.

## MEMORANDUM

ROBINSON, Senior District Judge.

THIS MATTER is before the Court upon the renewed Motion to Dismiss of defendant Jerome Merwald and the Motions for Partial Summary Judgment of defendants Richard R. Andersen, Roy J. Wilson and Timothy G. Mead. This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986. Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1332 and 1343.

### I

The chain of events which culminated in this litigation began on November 3, 1974 when James Cleary, plaintiff herein, was stopped by police officers in Sacramento, California for a traffic violation. Upon a routine check with the National Crime Information Center, the officers discovered that Mr. Cleary was the subject of an outstanding warrant for his arrest in Omaha, Nebraska on a charge of unlawful delivery of a controlled substance. The officers then arrested Mr. Cleary, and he was detained in the custody of the Sacramento Police Department in lieu of $25,000 bond on the Nebraska charge. The Sacramento authorities proceeded to advise the Omaha Police Division of their arrest and custody of Mr. Cleary and thereby determined that the Omaha authorities wished to extradite him to Nebraska for prosecution. The communications to Sacramento by the Omaha police manifesting their desire to extradite Mr. Cleary consisted of two telegrams, both dated November 3, 1974, and a letter dated November 4, 1974. One telegram was signed by defendant Wilson in his official capacity as a sergeant of the Omaha Police Division. The other telegram was signed by defendant Mead in his official capacity as a detective of the Omaha Police Division. The letter of November 4 was signed by defendant Andersen in his official capacity as Chief of the Omaha Police Division. Certified copies of the warrant for Mr. Cleary's arrest were enclosed with the letter.

Mr. Cleary executed a written waiver of the extradition process on November 6, 1974, apparently because he was unable to post the required $25,000 bond and did not wish to spend the extended period in the Sacramento jail which the formal procedure would have required. Two officers of the Omaha Police Division arrived in Sacramento on November 11, 1974 and returned Mr. Cleary to Omaha, where he was released from custody after posting a $2,000 bond.

A preliminary hearing on the charges against Mr. Cleary was held on December 6, 1974. The deputy county attorney present at the hearing moved at that time to dismiss the charges because the physical evidence of the crime, i. e., the marijuana which Mr. Cleary had allegedly sold to an undercover officer, could not be found.

Mr. Cleary subsequently brought this action against defendant Merwald, the deputy county attorney who approved Mr. Cleary's extradition when contacted by the Omaha police after the initial report from Sacramento was received; Chief Andersen; and Officers Wilson and Mead. Plaintiff's original complaint alleged that the defendants had acted when they either knew or should have known that their actions would violate plaintiff's constitutional rights, or that the defendants had maliciously intended to deprive him of his constitutional rights; that the defendants had conspired together to deprive plaintiff of his constitutional rights;

and that defendants Andersen and Merwald in their supervisory capacities failed or refused to prevent the acts complained of from being committed.

Each of the defendants moved to dismiss the complaint for plaintiff's failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). The motions of Andersen, Wilson and Mead were overruled, the Court finding that the qualified immunity from suit under 42 U.S.C.A. § 1983 *et seq.* to which these defendants are entitled did not defeat this action at the outset. (Filing No. 11, pp. 4–5). The motion of defendant Merwald was overruled on the ground that the plaintiff could allege facts which the prosecutor's quasi-judicial immunity would not defeat at this stage. The Court granted plaintiff the opportunity to amend his complaint so as to properly plead a cause of action against this defendant. (Filing No. 11, pp. 12–13). In coming to this result, the Court found that a prosecutor's role in the extradition process falls within the range of discretionary duties which normally entitle such an official to immunity from suit. (Filing No. 11, p. 9).

The plaintiff subsequently amended his complaint to comport with the findings of the Court. The relevant portion thereof now alleges that defendant Merwald

> wilfully and maliciously sought the plaintiff's extradition and certified that such extradition was in the interest of justice, knowing that the criminal case against the plaintiff would not be prosecuted, or that any such prosecution was doomed to failure.

(Filing No. 13, p. 4).

## II

In the interim since this Court ruled on defendant Merwald's Motion to Dismiss, the Supreme Court has had its first opportunity to address the issue of the § 1983 liability of a state prosecuting officer. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed. 128 (1976). Defendant Merwald has thus renewed his motion so that it may be considered in light of the definitive decision of the high Court.

In the *Imbler* case the Supreme Court held that

> in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.

409 U.S. at 431, 96 S.Ct. at 995.

The Court was explicit in limiting its holding, however, finding that it had no occasion to decide whether absolute immunity should apply to those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate. 409 U.S. at 430–31, 96 S.Ct. 984. This Court is thus called upon to determine whether defendant Merwald's actions fall within the purview of the *Imbler* rule; i. e., whether the prosecutor's function in the extradition process is part of initiating a prosecution and presenting the State's case.

As was stated above, the Court previously found that the decision to seek extradition falls within the range of discretionary duties performed by a prosecutor which were normally entitled to the pre-*Imbler* standard of quasi-judicial absolute immunity. This finding appears to mandate the application of the *Imbler* rule to the case at bar. Additionally, the reasons stated by the Supreme Court in reaching their decision in *Imbler* lend considerable weight to this conclusion.

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

. . . Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

409 U.S. at 424–26, 96 S.Ct. at 992.

■ From the foregoing it is apparent that the proper discharge of the prosecutor's duties in the criminal justice system requires that he be accorded unhampered discretion in deciding when to seek the extradition of an individual. Defendant Jerome Merwald's renewed Motion to Dismiss will therefore be sustained.

### III

■ The Motions for Partial Summary Judgment of defendants Andersen, Wilson and Mead will now be considered. These defendants in their capacities as police officers are entitled to a qualified immunity from civil suits for damages arising under § 1983 *et seq.*; that is to say, they cannot be held liable for plaintiffs' damages, if any, if it can be established that they acted in good faith and with probable cause. *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This standard contains both a subjective element of good faith and an objective element of reasonableness. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Guzman v. Western State Bank of Devils Lake,* 540 F.2d 948 (8th Cir. 1976).

The defendant police officers rely on this immunity in urging their motions. They do not controvert plaintiff's allegations with respect to what actually occurred in the process of his arrest and extradition, but they do dispute the state of mind which plaintiff ascribes to them in their conduct of this affair. Likewise, plaintiff does not dispute the validity of the warrants under which he was arrested nor does he claim that the extradition process undertaken here was unlawful or in deprivation of his

constitutional rights in and of itself. Rather, he bases his claim on the alleged bad faith and conspiratorial motive of these defendants. Thus, it can fairly be said that the objective facts of this matter are not controverted. The determinative issue for present purposes therefore becomes whether or not the immunity of the defendants has been clearly established.

The principles that are to be applied by a federal court in passing upon a motion for summary judgment are familiar. The Supreme Court has stated that

[s]ummary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case 'show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.Rules Civ. Proc. This rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.' [Citations omitted].

*Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962).

■ In passing upon such a motion the Court is required to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from underlying facts. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 153–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Percival v. General Motors Corporation,* 539 F.2d 1126 (8th Cir. 1976).

■ While a party who moves for summary judgment has a heavy burden of persuasion, the motion should nevertheless be granted if the Court is satisfied to the requisite degree of certainty that the record presents no genuine issue as to a material

fact and that the movant is entitled to judgment as a matter of law. *Percival v. General Motors Corporation, supra.* Thus, even though summary judgment is an extreme remedy which must be carefully applied, the Court is mindful of its salutary purpose in avoiding a useless, expensive, and time-consuming trial where there is no genuine, material factual issue to be tried. *Lyons v. Board of Education of Charleston, Etc.,* 523 F.2d 340, 347 (8th Cir. 1975).

■ In applying these principles of the summary judgment procedure to the question of defendants' immunity, the Court is required to determine whether there is a genuine, material factual issue with respect to either the *objective element of reasonableness* or the *subjective element of good faith,* both of which this defense requires to be established. *Wood v. Strickland, supra.*

Turning attention first to the requirement of reasonableness, the inquiry is whether the defendant police officers had reasonable grounds for their actions formed at the time and in light of all of the circumstances then and there existing. *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In this regard, the uncontested validity of the warrant for Mr. Cleary's arrest lends great weight to the reasonableness of these defendants' actions herein. *Cf. Daly v. Pedersen,* 278 F.Supp. 88 (D.Minn.1967). The affidavit of Chief Andersen regarding the usual procedures of the Omaha Police Division [attached to filing no. 15] and the deposition of defendant Merwald [filing no. 10] also support the conclusion that the acts of these defendants were reasonable under the prevailing circumstances. The Court therefore finds that the defendant police officers (including Chief Andersen) conducted themselves reasonably and with probable cause with respect to the extradition of the plaintiff.

■ The subjective element of the good faith of these defendants is considerably more troublesome. The Court is mindful of the admonition of the Court of Appeals that "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other

subjective feelings play dominant roles." *Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir. 1976). This general rule does not, however, relieve the Court of its responsibility to decide whether a genuine issue of fact exists, and the fact that state of mind should generally be a jury issue does not mean it should always be so in all contexts. *Washington Post Company v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965, 967 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

In support of their contention that there is no genuine, material factual issue as to their good faith in this matter the defendants rely principally on the aforementioned affidavit of Chief Andersen and the deposition of defendant Merwald. The affidavit states in pertinent part

that the extradition procedure is as follows: The Omaha Police Division is notified by a foreign jurisdiction that it is holding an individual based on an NCIC check which indicates that he is wanted in Omaha for the commission of a felony; after receiving this notification, the Omaha Police Division notifies the County Attorney; the County Attorney determines whether or not he wishes to seek extradition; if he decides to seek extradition, the County Attorney so informs the Police Division; the Police Division then notifies the jurisdiction holding the individual that they desire to extradite him, generally via telephone, followed by a written verification; if, as in the circumstances here, the individual being held waives extradition then some officers of the Police Division are sent, as agents of the County Attorney, at his direction and at his expense, to escort the individual back into the jurisdiction.

Affiant further states: that at all times material herein he has promulgated the official policy of the Omaha Police Division with regard to the above-described procedures; and that to the best of his knowledge, said procedures were followed in the situation involved here.

Defendant. Merwald in his deposition states that he

> was advised by an officer [of the Omaha Police Division] that Mr. Cleary had been arrested in California and I had recalled his name and knew that it was in connection with a sale of narcotics to an undercover officer here in the City [Omaha] and I knew that we had a positive drug analysis in our possession from the chemist because that was standard procedure. . . . I did tell the Officer that we would extradite Mr. Cleary from California.

*Deposition of Jerome Merwald,* p. 13, 1.21–25, p. 14, 1.1–8. Mr. Merwald in a later portion of his deposition reiterates that although the Omaha Police Division ordered Mr. Cleary's extradition from California, it was upon the decision and request of Merwald that this took place. *Id.* at p. 30, 1.7–16.

Mr. Merwald also states in his deposition that of the hundreds of drug cases with which he was associated while a member of the County Attorney's office, there was only one other instance of the evidence not being available at the time of trial. *Id.* at p. 25, 1.20–25. It also appears from his deposition that in a case such as this where an undercover "buy" of supposed narcotics is transacted, the evidence is taken to the Lutheran Medical Center for analysis and is then stored there until time for trial. The Police Division would normally have no further control over or access to the evidence after it has been transported to the lab.

In opposition to defendants' motions, plaintiff has offered an affidavit of his counsel concerning the written reports of the Omaha Police Division which relate to his extradition [filing No. 18]. This affidavit states that

> during his investigation of the plaintiff's claims alleged in his complaint the affiant has obtained copies of what appear to be all of the Omaha Police Division written reports relating to said claims, and that attached hereto are photocopies of four pages contained therein which represent all reports of communications from

Omaha, Nebraska to Sacramento, California law enforcement authorities relating to plaintiff's extradition alleged in his complaint.

The attached four pages are the telegram to Sacramento signed by defendant Wilson, the telegram to Sacramento signed by defendant Mead, the letter to Sacramento signed by Chief Andersen which had enclosed with it certified copies of the warrant for Mr. Cleary's arrest, and a later telegram signed by defendant Wilson informing the Sacramento authorities when the Omaha officers would arrive to pick up Mr. Cleary.

From this affidavit of his counsel that these four pages constitute the entire written record of the demand for his extradition plaintiff would raise the inference that the Police Division acted independently, without regard to standard procedure, and therefore in bad faith in ordering the extradition. The Court finds that the facts upon which plaintiff relies to support this inference are not susceptible of the interpretation which he seeks to give them. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). That being the case, plaintiff has not "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). Mere allegations of pleadings do not create a factual issue as against a motion for summary judgment supported by affidavits. *Jennings v. Davis,* 476 F.2d 1271 (8th Cir. 1973); 10 Wright and Miller, *Federal Practice and Procedure* § 2739, p. 710 (1973).

Plaintiff's allegations of a conspiracy between the defendants to deprive him of his constitutional rights must fall on the same basis as the allegations of bad faith. Plaintiff claims that paragraph 4 of his amended complaint furnishes the supporting facts for this allegation. The Court finds that paragraph 4 contains only those uncontroverted objective facts of Mr. Cleary's extradition and that these facts do not support the conspiracy claim. This allegation is therefore wholly conclusionary in nature and is hence insufficient to consti-

tute a basis for relief. *Harley v. Oliver,* 539 F.2d 1143, 1146 (8th Cir. 1976); *Guedry v. Ford,* 431 F.2d 660, 664 (5th Cir. 1970).

From the foregoing the Court has concluded that the Motions for Partial Summary Judgment of defendants Andersen, Wilson and Mead must be sustained.

A separate Order will be entered this day in accordance with the terms of this Memorandum.