Paula LARSEN, individually, and as mother and next best friend of Paul Larsen, a minor child, and Paul Larsen, Plaintiffs,

v.

Norman S. EARLY, Jr., Lamar Sims, Jann DuBois and Jeffrey M. Wells, Defendants.

Civ. A. No. 93–K–1637.

United States District Court, D. Colorado.

Feb. 3, 1994.

Paula Larsen, pro se.

Gregory J. Ruegsegger, Denver, CO, David Brougham, Hall & Evans, Washington, DC, David Zook, Dist. Attys. Office, Colorado Springs, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiffs Paula Larsen and Paul Larsen, a minor child, ("the Larsens") bring various civil rights claims under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1988 against defendants Norman ,S. Early Jr., the former Denver District Attorney, Lamar Sims, a Deputy District Attorney serving under Early, Jann Dubois, a District Attorney for El Paso County and Jeffrey M. Wells, a duly elected senator to the Colorado General Assembly. The matters before me are three motions to dismiss filed by defendants.

Though previously set for oral argument, I have reviewed the briefs on file and find them adequate to rule on these motions without the need for oral argument. Therefore, the hearing set for February 3, 1993 is vacated.

## I. BACKGROUND

The Larsens' complaint, filed on August 3, 1993, seeks damages against Early and Sims for their refusal to extradite the father of Paul Larsen, William J. Moskalik, for failing to pay child support, and against all defendants for conspiring with fraudulent intent to change the Colorado statute concerning the appropriate parties for initiating a felony non-support action.

The following facts are undisputed. In July 1991, the Larsens, through counsel, sought to obtain an arrest warrant and extradition of Moskalik for non-payment of child support by directly filing a complaint for felony non-support with the Denver County Court. Plaintiffs contended that Colo.Rev. Stat. § 14–6–104 (Supp.1991) authorized a private party to file a criminal complaint for felony non-support.[1] The Denver County Court accepted the complaint for felony non-support under the statute and, on July, 3, 1991, issued an arrest warrant for Moskalik and an order to the Denver District Attorney (then Early) to take the necessary steps to obtain Moskalik's extradition from Arizona.

On July 18, 1991, following notification of this order, Early and Sims moved to vacate the extradition order on the ground that the Colorado Criminal Code reserves to the district attorney the decision of whether or not to file a criminal complaint and that, since no felony complaint had been filed, the court lacked jurisdiction to issue an extradition order. Following a hearing on July 23, 1991,

---

1. Plaintiffs obtained a prior determination of paternity and order for child support from Moska-

lik in the Jefferson County District Court.

the court stayed the warrant for thirty days to allow Early and Sims to appeal the issue of whether a private citizen could file a criminal complaint for felony non-support and to allow the Larsens to seek a writ of mandamus from a state district court. The Larsens made a formal written request to Early to proceed with the execution of the warrant and the extradition of Moskalik. Early did not comply and the Larsens brought a mandamus action under C.R.C.P. 106(a)(2) to require the District Attorney to initiate extradition proceedings against Moskalik. The court, without reaching the merits, dismissed the Larsens' mandamus complaint for failure to file the record before the court. The Larsens did not appeal this ruling but again requested Early to extradite Moskalik.

When Early still failed to comply, the Larsens filed a second mandamus action. In 1992, the Colorado legislature amended Colo. Rev.Stat. § 14–6–104 to clarify that a private party could not file a felony non-support complaint. In June 1993, the Denver District Court dismissed the Larsens' second mandamus complaint for failure to state a claim upon which relief can be granted and for lack of jurisdiction. The court noted that Paula Larsen had other remedies to enable her to pursue child support, including but not limited to Colo.Rev.Stat. § 16–5–209 and the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), Colo.Rev.Stat. § 14–5–101 to –144 (1987 Repl.Vol.) Further, the District Court barred Paula Larsen from filing any further pleadings arising out of the 1991 arrest warrant and order for extradition. Paula Larsen filed a motion for reconsideration, which at the time of the filing of the response to the subject motion was still pending. The Larsens now bring claims in federal court under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1988.

## II. *MERITS*

A. *Motion to Dismiss of Early and Sims*

██ At the outset, I must decide whether it is appropriate to treat Early and Sims' motion to dismiss as one for summary judgment. The motion is characterized as a Fed. R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief may be granted.

Since Early and Sims and the Larsens have submitted additional evidence beyond the pleadings, I treat the motion as a Rule 56 motion for summary judgment. Fed. R.Civ.P. 12(b); *see Wheeler v. Hurdman*, 825 F.2d 257, 258–60 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

██ Early and Sims argue, *inter alia*, that they are entitled to absolute immunity with respect to their refusal to extradite Moskalik. In this regard, summary judgment would be appropriate if there exists no genuine dispute of fact on this issue. *See Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). I must view the record in the light most favorable to the Larsens, who are opposing this motion. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

██ Early and Sims argue that they are entitled to absolute prosecutorial immunity. To determine whether a prosecutor is entitled to absolute immunity for a particular act, I must examine the "nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988). In *Imbler v. Pachtman*, the court held that prosecutors sued in their personal capacity under 42 U.S.C. § 1983 are absolutely immune for their conduct in "initiating a prosecution and in presenting the State's case." 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). The *Imbler* court expressly reserved determination of absolute immunity for a prosecutor acting in the role of an administrator or investigative officer rather than that of an advocate. *Id.*, n. 33. In *Burns v. Reed*, the Court held that the relevant inquiry is "whether the prosecutor's actions are closely associated with the judicial process." 500 U.S. 478, ——, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (1991). In *Burns*, the complainant had argued that the prosecutor violated his constitutional rights by participating in a probable cause hearing for the issuance of a search warrant and by giving legal advice to the police. The prosecutor raised absolute immunity as a defense. The court held that the doctrine should apply

to his participation in the probable cause hearing because it was "'intimately associated with the judicial phase of the criminal process.'" *Id.* at ——, 111 S.Ct. at 1942 (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 994). The Court could not, however, find an historical or a common-law basis upon which to extend the doctrine of absolute immunity for the giving of legal advice and declined to grant the immunity in this regard. *Id.* 500 U.S. at ——, 111 S.Ct. at 1942–44.

Recently, in *Buckley v. Fitzsimmons*, the Court reiterated the principle that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." —— U.S. ——, ——, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993).

The Larsens argue that Early and Sims are not entitled to absolute immunity for failing to take steps to extradite Moskalik because the duty to do so was an administrative one. Tenth Circuit precedent has established that "'the determinative factor is "advocacy" because that is the prosecutor's main function and the one most akin to his quasi-judicial role.'" *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir.1991) (citing *Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir.), *cert. denied*, 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985)).

I conclude that Early and Sims' declination to extradite Moskalik from Arizona was within their prosecutorial function as advocates for the State of Colorado because extradition is "intimately associated with the judicial phase of the criminal process." *Pusey v. City of Youngstown*, 11 F.3d 652, at 658 (6th Cir.1993). The prosecutor's determination of whether to extradite is clearly a litigation-associated duty, whether or not the Larsens believe that it was a discretionary one. As a core prosecutorial function, it is protected by absolute immunity. *Id.; see also Ross v. Meagan*, 638 F.2d 646, 648–49 (3rd Cir.1981).

I conclude that no genuine question of material fact exists on this issue and that Early and Sims are entitled to prosecutorial

immunity as a matter of law.[2] This being the case, I do not reach the other grounds for dismissal raised by Early and Sims in their motion to dismiss, treated here as a motion for summary judgment.

B. *Motion To Dismiss of Senator Jeffrey M. Wells*

■ Senator Wells moves to dismiss on the grounds that absolute legislative immunity bars the Larsens' complaint against him, since the only allegations concerning him are that, as part of the legislative process, he sponsored an amendment to the child support laws of the State of Colorado and presented the amendment to his fellow legislators.

■ Under Fed.R.Civ.P. 8(a), a plaintiff is required to offer a short and plain statement (1) of the grounds upon which the court's jurisdiction depends and (2) of the claim showing that the pleader is entitled to relief. In ruling on a motion to dismiss, whether on the ground of lack of jurisdiction over subject matter under Rule 12(b)(1) or for failure to state a cause of action under Rule 12(b)(6), I must accept all factual allegations as true and must draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). All of the plaintiff's pleadings must be liberally construed. *Swanson v. Bixler*, 750 F.2d 810, at 813 (10th Cir.1984). A complaint that sets out sufficient facts to demonstrate affirmatively that the plaintiff has no right to recover is properly dismissed without leave to amend. *See Estelle v. Gamble*, 429 U.S. 97, 107–08 & n. 16, 97 S.Ct. 285, 292–93 & n. 16, 50 L.Ed.2d 251 (1976).

■ Legislative defendants are absolutely immune from suit for damages, declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for their acts in connection with the legislative process. *Supreme Ct. of Virginia v. Consumer's Union of United States, Inc.*, 446 U.S. 719, 731–33, 100 S.Ct. 1967, 1974–75, 64 L.Ed.2d 641 (1980); *Tenney v. Bran-*

---

2. As discussed below, legislative immunity bars proof of the conspiracy theory underlying the Larsens second claim for relief. Therefore, that claim must fail against all defendants.

**1314**

*dhove,* 341 U.S. 367, 379, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951). In their response to Senator Wells' motion, the Larsens concede the existence of legislative immunity, but argue that it does not apply to: (1) legislative actions occurring outside the Senate floor, (2) fraudulent misrepresentation of an act or bill to fellow legislators, and (3) a conspiracy fraudulently to mislead fellow legislators. A review of the relevant law indicates, however, that even if each of the alleged actions occurred, Senator Wells would nevertheless be protected by legislative immunity.

■ Legislative immunity does not depend on the geographical location of the activity; rather, it depends upon the nature of the activity. *Holmes v. Farmer,* 475 A.2d 976, 984 (R.I.1984). Therefore legislative immunity protects all of Senator Wells' legislative actions, regardless of where they occurred.

■ The Larsens apparently argue that Senator Wells' statements about the effect of the bill were improperly motivated, in that they were designed fraudulently to mislead his fellow legislators. However, one of the basic purposes of legislative immunity is to avoid inquiry into the motivation of legislators for the performance of legislative acts. *See e.g., United States v. Brewster,* 408 U.S. 501, 525, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972). Further, a mere claim of unworthy purpose does not destroy the privilege. *Tenney v. Brandhove,* 341 U.S. at 377, 71 S.Ct. at 788. Legislative immunity has even been held to apply to legislative actions which would otherwise be a violation of criminal or civil statute. *See Doe v. McMillan,* 412 U.S. 306, 312–13, 93 S.Ct. 2018, 2024–25, 36 L.Ed.2d 912 (1973).

■ The Larsens final argument, that legislative immunity does not apply to the alleged conspiracy between Senator Wells and the other defendants, must likewise fail. The Larsens argue that, even if the actual alleged fraudulent misrepresentations are subject to legislative immunity, the agreement fraudulently to misrepresent the effects of the bill are not. In *United States v. Johnson,* 383 U.S. 169, 177, 86 S.Ct. 749, 753, 15 L.Ed.2d 681 (1966), the Court held that proof of a conspiracy claim, whereby a con-

gressman would accept money to deliver a speech in Congress, required a showing that the speech was made for improper purpose and that the congressman involved was not acting in good faith. Such an intensive judicial inquiry violates the express language of the Speech or Debate Clause of the Constitution and the policies underlying it. *Id.* Here, to prove their conspiracy theory, the Larsens would have to show an improper motive on the part of Senator Wells and improper actions in presenting the proposed legislation to fellow legislators, both of which are precluded by legislative immunity. Thus, legislative immunity bars their conspiracy claim which is dependent upon proof of legislative activity itself protected by legislative immunity.

For these reasons, I dismiss with prejudice the Larsens' claims against Senator Wells.

### C. *Motion To Dismiss of Jann Dubois*

The Larsens' sole claim against Dubois, a District Attorney in El Paso County, is that he participated in a conspiracy with the other defendants fraudulently to misrepresent the nature of a proposed legislative amendment. As stated above, legislative immunity bars the conspiracy claim. I therefore grant Dubois' motion to dismiss the Larsens' complaint for failure to state a claim against him.

### III. *CONCLUSION*

I order that judgment enter against the Larsens on their complaint against Early and Sims and I dismiss with prejudice the claims against Senator Wells and Dubois.