Mousa I. DABABNAH, M.D.,
Plaintiff–Appellee,

v.

Kristen KELLER–BURNSIDE, Chief Assistant Prosecuting Attorney for Raleigh County, Beckley, WV 25801, Defendant–Appellant,

and

Anthony S. Reed, West Virginia Public Safety Department 19–21 By Pass Beckley, WV 25801; Craig A. Light, West Virginia Public Safety Department 19–21 By Pass Beckley, WV 25801; John Does, (3–5), Defendants.

No. 99–1467.

United States Court of Appeals,
Fourth Circuit.

Argued: Jan. 24, 2000

Decided: April 3, 2000

**Argued:** Kenneth Eugene Knopf, Pullin, Knopf, Fowler & Flanagan, Beckley, West Virginia, for Appellant. John Christian Yoder, Harpers Ferry, West Virginia, for Appellee. **On Brief:** Eric A. Collins, Michael W. Blake, Pullin, Knopf, Fowler & Flanagan, Beckley, West Virginia, for Appellant. J. Thomas Burch, Jr., William T. Bennett, Burch & Cronauer, P.C., Washington, D.C., for Appellee.

Before WILKINSON, Chief Judge, and LUTTIG and MOTZ, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge LUTTIG joined. Judge DIANA GRIBBON MOTZ wrote an opinion concurring in the judgment.

## OPINION

WILKINSON, Chief Judge:

Mousa Dababnah brought this § 1983 action against Kristen Keller–Burnside, the chief assistant prosecuting attorney for Raleigh County, West Virginia. Dababnah argues that Keller–Burnside violated his constitutional rights by requesting a court order to secure his property and by seeking his extradition from Virginia. The district court denied Keller–Burnside's summary judgment motion, finding that she was not protected by either absolute or qualified immunity. Because Keller–Burnside's actions were prosecutorial functions "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), we hold that she is absolutely immune from suit. We thus reverse the judgment and remand with instructions to dismiss Dababnah's claims against Keller–Burnside.

### I.

On December 23, 1994, appellee Mousa Dababnah, a medical doctor residing in West Virginia, destroyed a 1994 Plymouth Voyager. On March 30, 1995, the Magistrate Court of Raleigh County, West Virginia, found Dababnah guilty of misdemeanor destruction of property and sentenced him to five days in jail. During this same time, Dababnah and his wife were involved in divorce proceedings. On September 5, 1995, the presiding judge of these proceedings, Judge Robert Burnside, found Dababnah in contempt and ordered him committed to jail until he complied with the court's final divorce order requiring payment of child support and arrearage thereon.

Dababnah appealed the destruction of property conviction to the Raleigh County Circuit Court. The court granted him a trial de novo and docketed the case for December 1, 1995, before Judge H.L. Kirkpatrick, III. Dababnah alleges that neither he nor his attorney was notified of this trial date. Dababnah failed to appear for trial, and the court imposed the same five-day term of imprisonment. The Raleigh County Prosecutor's Office then secured the issuance of a capias and a fugi-

tive warrant for the misdemeanor. During this time, Keller–Burnside, the wife of Judge Burnside, was employed as the chief assistant prosecuting attorney for Raleigh County.

In the latter months of 1995, Dababnah was at the Shenandoah Inn in Wytheville, Virginia. During his stay in Virginia, Dababnah circulated allegations of corruption by the Raleigh County Circuit Court, including Judge Burnside, to numerous state and federal officials via fax, letter, and advertisement. On December 5, 1995, the Virginia State Police arrested Dababnah pursuant to the capias and transported him from his hotel room to a Virginia jail. The next day Dababnah was brought before a Wythe County Judge. At this hearing Dababnah signed a Waiver of Extradition Proceedings. This form acknowledged that the judge "fully explained" to Dababnah his "rights concerning the issuance and service of the process of extradition, [his] right to be represented by a lawyer in extradition proceedings, and [his] right to petition for a writ of habeas corpus."

On December 8, 1995, two West Virginia police officers were dispatched to secure Dababnah's return. The officers claim they were also directed to take possession of Dababnah's equipment at the Shenandoah Inn and transport these items back to West Virginia. The officers visited the hotel first. Upon arrival, the hotel manager expressed concerns about the loss or destruction of Dababnah's possessions because Dababnah had vacated the premises. The hotel manager allowed the troopers into Dababnah's room. The troopers removed some equipment, including a fax machine and computer. They placed this equipment in the trunk of their police cruiser.

The troopers then traveled to the Virginia jail and took Dababnah into custody. They drove Dababnah to his bond hearing in Raleigh County, West Virginia. Judge Kirkpatrick presided over the hearing and Keller–Burnside represented the state.

Dababnah claims that his retained counsel was not notified of the hearing and that before the hearing began Keller–Burnside erroneously told him that this attorney was no longer representing him. During the hearing, Keller–Burnside argued on behalf of the state that Dababnah should serve the same five-day sentence for the destruction of property conviction, less a credit for the time served in Virginia. She also informed the court that new arrest warrants might soon be issued against Dababnah for intimidating an officer of the court, obstructing justice, and failing to pay child support. The court credited Dababnah with the time served in Virginia and ordered him to serve the remaining two days of his sentence. The court also ordered Dababnah held until he could appear before Judge Burnside pursuant to the contempt order from the divorce proceeding.

Either prior to or during the hearing, Keller–Burnside was informed that the West Virginia troopers had secured or wanted permission to secure Dababnah's property from his hotel room. During the hearing, Keller–Burnside moved for an order authorizing the seizure and detention of Dababnah's property. Keller–Burnside's request was made in open court with Dababnah present. The court entered the following order: "The Court finding that such property should be secured to protect the defendant's interests while incarcerated, does Order that such property be so inventoried and secured by either the West Virginia or Virginia State Police." The property was thereby retained by the West Virginia State Police. Dababnah claims that he did not receive this property for two years. The police counter that Dababnah neither asked for the equipment nor tried to obtain it during this time.

On December 13, 1995, while Dababnah was still in jail for his contempt charge, the Raleigh County Magistrate Court entered a criminal complaint against and issued an arrest warrant for Dababnah. Dababnah was charged with threatening to

kill C. Elton Byron, a lawyer who had represented Dababnah's wife in their divorce proceedings. Just over two months later Dababnah was released from jail after assuring Judge Burnside that he would comply with the divorce decree. On July 22, 1996, pursuant to Byron's request, Keller–Burnside successfully moved the court to dismiss the charges against Dababnah for threatening a judicial officer.

On November 24, 1997, Dababnah filed this § 1983 action against Keller–Burnside. Dababnah alleged, *inter alia*, that (1) Keller–Burnside deprived him of his Fourth Amendment rights by applying for an improper court order for detention of his property, and (2) Keller–Burnside, motivated by a desire to retaliate against Dababnah for exercising his First Amendment rights against her husband, sought Dababnah's extradition. Keller–Burnside filed a motion for summary judgment, arguing that she was entitled to absolute immunity and/or qualified immunity. The district court denied her motion. Keller–Burnside now appeals.

## II.

### A.

A prosecutor enjoys absolute immunity for prosecutorial functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In other words, absolute immunity is afforded prosecutors when acting "within the advocate's role." *Buckley v. Fitzsimmons*, 509 U.S. 259, 278, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Despite this standard, the district court declined to grant absolute immunity to Keller–Burnside for her courtroom actions seeking a court order to secure Dababnah's property. The Supreme Court in *Burns v. Reed* stated, "since the issuance

of a search warrant is unquestionably a judicial act, appearing at a probable-cause hearing is 'intimately associated with the judicial phase of the criminal process.'" 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (citations omitted). Likewise, the issuance of the court order in this case was "unquestionably a judicial act." Thus, Keller–Burnside's appearance in court seeking this order is presumed to be protected by absolute immunity.[1]

Dababnah, however, contends that Keller–Burnside was acting in either an investigative or administrative capacity and thus cannot be protected by absolute immunity. He argues that part of Keller–Burnside's reason for seeking the court order was to acquire court approval for a search for evidence to be used in a future prosecution and that this constituted an investigative function. The order itself, however, speaks only of safeguarding Dababnah's property (order "finding that such property should be secured to protect the defendant's interests while incarcerated," and directing "that such property be so inventoried and secured by either the West Virginia or Virginia State Police"). And in all events to deny a prosecutor absolute immunity for advocacy in open court five days before a defendant's impending prosecution for threatening a judicial officer is to cramp the concept of the prosecutorial function in a manner that the Supreme Court would not tolerate.

Dababnah also contends that even if Keller–Burnside's request was intended to secure Dababnah's property solely for safekeeping, she is still not entitled to absolute immunity. He argues that such a request is purely administrative because police can secure property without court approval. This argument misses the mark. Even if the order securing Dababnah's property were superfluous, a prosecutor should not be stripped of immunity

---

1. The circumstances here are far removed from those in *Allen v. Lowder*, 875 F.2d 82 (4th Cir.1989), where a prosecutor was denied absolute immunity for seeking a court order. In *Allen*, the prosecutor had sought a post-trial court order at a point in time when he was no longer representing the state.

for seeking approval of official actions from a court. Dababnah can hardly be heard to complain about a prosecutor's resort to the judicial process, which the Supreme Court has extolled as "largely self-correcting," *Mitchell v. Forsyth,* 472 U.S. 511, 522, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and designed for the protection of individual liberties and rights. In the present case, the judicial process provided numerous safeguards to Dababnah. First, Keller–Burnside was acting "under the watchful eye of the judge and in the shadow of the ever-present possibility of judge-imposed sanctions." *Marrero v. City of Hialeah,* 625 F.2d 499, 509 (5th Cir.1980); *see also Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler,* 424 U.S. at 427, 96 S.Ct. 984. Second, Dababnah was present in court when Keller–Burnside requested the order. And he had the right to have an attorney present at this hearing.[2]

Further, prosecutorial abuses—and we in no sense imply the presence of misconduct here—are subject to criminal and professional sanction. *See, e.g., Imbler,* 424 U.S. at 429, 96 S.Ct. 984; *Malley v. Briggs,* 475 U.S. 335, 343 n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Dababnah has, in fact, already filed a complaint with the West Virginia bar against Keller–Burnside, presumably covering at least some of the same actions he challenges in this § 1983 suit. Protections such as these "obviate the need for damages actions to prevent unjust results." *Mitchell,* 472 U.S. at 522–23, 105 S.Ct. 2806; *accord Butz,* 438 U.S. at 512, 98 S.Ct. 2894.

Absolute prosecutorial immunity "is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (quoting *Malley,* 475 U.S. at 342, 106 S.Ct. 1092). Failure to grant a prosecutor immunity for actions taken in open court in pursuit of a court order would be a portentous step. We decline to discourage prosecutorial resort to the judicial process in this manner.[3]

### B.

■ The district court also erred in refusing to afford Keller–Burnside absolute immunity for her alleged role in seeking Dababnah's extradition. Numerous courts have found prosecutors absolutely immune when undertaking such actions. *See, e.g., Larsen v. Early,* 842 F.Supp. 1310, 1313

2. The fact that Dababnah chose to waive this right is of no consequence. Along with Dababnah's other claims, he contends that Keller–Burnside violated the Sixth Amendment by incorrectly informing him before the December 8 hearing that his counsel was no longer representing him. This claim is meritless. We cannot understand, and Dababnah has provided no theory explaining, how this pre-hearing discussion concerning the absence of his attorney deprived Dababnah of his constitutional right to counsel.

3. Our concurring colleague is prepared to unduly burden prosecutorial advocacy in open court. The concurrence would go behind the face of court orders to parse in detail the colloquy between judicial officers and prosecutors, all in an effort to establish ulterior motive on the part of the latter. None of the cases to which the concurrence makes reference goes nearly that far. Surprisingly, the concurrence compares seeking a search warrant, which is generally done ex parte by police officers, with oral advocacy by government attorneys in adversary proceedings in open court. *See post* at 474 n*. The approach of the concurrence would dissuade prosecutors from seeking court approval for official actions and would encourage litigation when they do. This would impair the purposes for which absolute immunity was established in the first place—namely, to protect the independence of prosecutorial judgment, and in so doing, to insure the integrity of judicial procedures. *See, e.g.; Kalina,* 522 U.S. at 127, 118 S.Ct. 502; *Malley,* 475 U.S. at 341–43, 106 S.Ct. 1092; *Imbler,* 424 U.S. at 423–28, 96 S.Ct. 984.

In purporting to state the holding in this case, the concurrence declines to make use of direct quotation. It goes without saying that the majority opinion, not the gloss that the concurrence seeks to place thereon, is controlling.

(D.Colo.1994) (prosecutor entitled to absolute immunity since "extradition is 'intimately associated with the judicial phase of the criminal process'"); *Cleary v. Andersen,* 423 F.Supp. 745, 747–48 (D.Neb. 1976) ("[I]t is apparent that the proper discharge of the prosecutor's duties in the criminal justice system requires that he be accorded unhampered discretion in deciding when to seek the extradition of an individual."); *Cross v. Meisel,* 720 F.Supp. 486, 489 (E.D.Pa.1989); *Arebaugh v. Dalton,* 600 F.Supp. 1345, 1351 (E.D.Va.1985); *Hayes v. County of Mercer,* 217 N.J.Super. 614, 526 A.2d 737, 739–40 (1987). Dababnah refers us to no contrary holding.

We agree that absolute immunity attaches to Keller–Burnside's request for Dababnah's extradition.[4] Insuring that a defendant is present both for trial and for punishment is critical to a prosecutor's discharge of her duties. *See, e.g., Ehrlich v. Giuliani,* 910 F.2d 1220, 1223 (4th Cir. 1990) ("One of the most important duties of a prosecutor pursuing a criminal proceeding is to ensure that defendants … are present at trial."); *Schrob v. Catterson,* 948 F.2d 1402, 1416 (3d Cir.1991) (same); *Cross v. Meisel,* 720 F.Supp. 486, 489 (E.D.Pa.1989) ("the decision [by a prosecutor] to seek the presence of a defendant is safely within the quasi-judicial, and hence absolutely immune, part of a prosecutor's duties"). Indeed, if a convicted defendant is not available for punishment, the prosecution itself would be rendered pointless.

Moreover, seeking extradition is one of those prosecutorial functions "to which the reasons for absolute immunity apply with full force." *Imbler,* 424 U.S. at 430, 96 S.Ct. 984. Pursuing an extradition is likely to provoke "with some frequency" retaliatory suits by resentful defendants. *Id.* at 425, 96 S.Ct. 984 ("a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"). Without the protection of absolute immunity, these suits would impede on the prosecutor's courage and "independence of judgment." *Id.* at 423, 96 S.Ct. 984. In such instances "it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Id.* at 428, 96 S.Ct. 984 (internal quotation marks omitted).

There are also safeguards in the extradition process that "obviate the need for damages actions to prevent unjust results." *Mitchell,* 472 U.S. at 522–23, 105 S.Ct. 2806. After being apprehended by Virginia State troopers, Dababnah was afforded a judicial hearing. At this hearing, Dababnah was informed of his rights to be represented by a lawyer and to contest the extradition. Instead of going through the formal extradition process, however, Dababnah signed a Waiver of Extradition Proceedings and voluntarily consented to return to West Virginia. Dababnah's subsequent regrets about not challenging his extradition simply cannot find refuge in the form of a § 1983 suit against Keller–Burnside.

### III.

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to dismiss Dababnah's claims against Keller–Burnside.

*REVERSED AND REMANDED*

DIANA GRIBBON MOTZ, Judge, concurring in the judgment:

For the reasons stated by the majority, I agree that Keller–Burnside enjoys absolute immunity for acts related to initiating

---

**4.** While Keller–Burnside concedes that extraditions based on misdemeanor charges "are not common," Dababnah has pointed to no authority that would foreclose the state from seeking extradition based on such charges. We further note that none of the technical irregularities that Dababnah alleges with respect to the extradition documents rises to the level of a constitutional violation.

extradition proceedings against Dababnah, but I part company with the majority in its extension of absolute immunity to her request for a court order to secure Dababnah's property. Nevertheless, because Keller–Burnside's acts indisputably did not cause the asserted constitutional violation, I concur in the judgment.

The Supreme Court has recognized the defense of absolute immunity for prosecutorial duties that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). However, the same immunity does not apply to a prosecutor's actions that are investigative or administrative. *See id.; Harlow v. Fitzgerald*, 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Therefore, when a court is asked to determine whether a prosecutor is entitled to absolute immunity, it is to examine "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Moreover, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Keller–Burnside has utterly failed to satisfy her burden of proving that absolute immunity protects her against liability flowing from her request for a court order to secure Dababnah's property.

In holding to the contrary, the majority relies heavily on the fact that Keller–Burnside requested the order in open court at the end of Dababnah's bond hearing. Without citation to authority, the majority suggests that for this reason her action is "presumed to be protected by absolute immunity." *Ante* at 470. Although I recognize the safe-guards against prosecutorial misconduct inherent in a judicial forum, *see, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 522, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), there is simply no basis in the law for insulating from liability *all* conduct that occurs in open court.

The Supreme Court has never held that the particular forum in which challenged conduct takes place is definitive one way or the other on the question of prosecutorial immunity. Nor has the Court eliminated the prosecutor's burden of proving entitlement to absolute immunity when she demonstrates that her allegedly wrongful act occurred before a judge while the court was in session. Similarly, the Court has not limited the investigative or administrative function analysis to conduct that takes place outside the formal strictures of a court proceeding. Faithful application of the functional approach prescribed by *Imbler* and its progeny focuses on the underlying function of the prosecutor's specific acts rather than on the context in which they occur.

When that analysis is applied here it is clear that Keller–Burnside has not demonstrated her entitlement to absolute immunity. True, the court order "speaks only of safeguarding Dababnah's property," *ante* at 470, but Keller–Burnside requested the order to further evidence-gathering investigative activities, and the judge understood that it was to be so used. Thus, at the end of the bond hearing, Keller–Burnside stated that "[i]f it's agreeable with the Court, I was going to advise [the police] ... to secure [the property] the best they can, either by the motel if the motel is willing to do it without billing the State or put it in evidence...." The court responded that "if the charges are going to be brought ... as you say, Ms. Keller, some of that equipment will be evidence in, perhaps, a future matter." These statements make plain that Keller–Burnside did not seek the court order to fulfill any prosecutorial duty. Rather, she acted in an investigative capacity (or, as the majority seemingly concedes, an administrative one).

Nor does the fact that Keller–Burnside requested the order "five days before a

defendant's impending prosecution for threatening a judicial officer," *ante* at 470, establish her entitlement to absolute immunity. As the district court correctly concluded, absolute immunity protects a prosecutor's evidence-gathering activities only when it is clear that the prosecutor has decided to pursue an indictment, and not a day (or five) before that. *See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 509–10, 139 L.Ed.2d 471 (1997) (upholding absolute immunity for prosecutor's conduct related to the preparation and filing of charging documents, but not for execution of certification for probable cause determination); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (holding that a prosecutor would be entitled to absolute immunity for "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury *after* a decision to seek an indictment has been made") (emphasis added); *Ehrlich v. Giuliani*, 910 F.2d 1220, 1223 (4th Cir.1990) (upholding absolute immunity for prosecutors' actions that involved investigation of assets because they "had already made the decision to initiate criminal proceedings and were preparing their case for trial").*

In this case, Keller–Burnside failed to offer any evidence that the Raleigh County Prosecutor's Office had decided to file additional charges and seek an indictment against Dababnah for his alleged threats against his ex-wife's attorney. Rather, the record reflects only that the police were concluding a series of interviews pertaining to the matter. Thus, Keller–Burnside's request for the court order was not related to "the protected decision to initiate prosecution, but rather the earlier preliminary gathering of evidence which may blossom into a potential prosecution." *McSurely v. McClellan*, 697 F.2d 309, 320 (D.C.Cir.1982) (denying absolute immunity to prosecutor for investigative activities and for conduct under court's safekeeping order); *see also id.* at 319 (explaining that "[t]o immunize absolutely a prosecutor's actions unrelated or only tangentially related to the prosecution of a particular case would contravene the functional rationale which underpins the absolute immunity doctrine.").

Although Keller–Burnside has not demonstrated her entitlement to absolute immunity in connection with the request for an order to secure Dababnah's property, she nonetheless cannot be held liable for the asserted violation of Dababnah's Fourth Amendment rights. To prevail on any 42 U.S.C. § 1983 claim, a plaintiff must prove, *inter alia*, that the defendant *caused* or participated in the alleged deprivation of his constitutional or statutory rights. *See, e.g., Monell v. Department of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The Supreme Court consistently has refused to impose § 1983 liability upon defendants where the causal connection between their conduct and the constitutional injury is remote rather than direct." *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 686 (2d Cir.1998) (citing *Mar-*

---

* In these cases, as the majority notes, *ante* at 471 n. 3, the courts had no occasion to "go behind the face of court orders ... to establish ulterior motive on the part" of the prosecutors. But that does not mean that the Supreme Court has disapproved this approach. Indeed, in *Burns v. Reed*, the Court explicitly noted that only because Burns did not challenge the prosecutor's "motivation in seeking the search warrant," it did not reach the motivation issue. 500 U.S. at 487–88, 111 S.Ct. 1934. In a separate opinion in *Burns*, Justice Scalia did address that issue and concluded that when a prosecutor obtains a search warrant with improper motivation he does *not* enjoy absolute immunity; Justice Scalia explained that "[t]he act of procuring a mere *search* warrant," *id.* at 506, 111 S.Ct. 1934, " 'is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.' " *Id.* at 505, 111 S.Ct. 1934 (quoting *Malley v. Briggs*, 475 U.S. 335, 342–43, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Procuring a court order to secure a defendant's property, as Keller–Burnside did, is even "further removed" from acts taken to advance a legitimate prosecutorial function.

*tinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)).

Dababnah does not dispute the district court's finding that "[e]ither just prior to or during the bond hearing, Keller [sic] was advised that the officers had secured Dr. Dababnah's equipment from the hotel room." Keller–Burnside's request for a court order to secure Dababnah's property thus occurred *after* the officers had searched the hotel room and seized Dababnah's property. The undisputed facts as to the sequence of events make clear that Keller–Burnside's action did not in any way cause the alleged constitutional infringement.

For these reasons, I respectfully decline to join the opinion of the court and concur only in the judgment.