Charles Lee ALLEN, Plaintiff–Appellee,

v.

Carroll R. LOWDER; Aaron J. Johnson; Nathan Rice, Defendants–Appellants,

and

W. Franklin McGuirt; David W. Chester; Laura Perry; Tommy Allen; Sam Kelly, Defendants.

No. 87–6727.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1989.

Decided May 23, 1989.

LaVee Hamer Jackson, Sylvia Hargett Thibaut, Asst. Attys. Gen., Raleigh, N.C. (Lacy H. Thornburg, Atty. Gen., North Carolina Dept. of Justice, Pittsboro, N.C., on brief), for defendants-appellants.

Linda Beth Weisel (North Carolina Prisoner Legal Services, Washington, D.C., on brief), for plaintiff-appellee.

Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and KELLAM, United States Senior District Judge for the Eastern District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

Carroll R. Lowder, Aaron J. Johnson, and Nathan Rice, defendants below,[1] bring this interlocutory appeal from a district court order denying them summary judgment in a 42 U.S.C. § 1983 action filed by Charles Lee Allen. Allen's complaint alleged that these state officials' acts caused him to be

---

**1.** W. Franklin McGuirt, Sheriff of Union County, Laura Perry, a records clerk with the North Carolina Department of Correction, Tommy Allen, the Chief Jailer of Union County, and Sam Kelly, an employee of the Union County Sheriff's Department, are also defendants in this action. They are not, however, parties to this appeal concerning the immunity defenses of Lowder, Johnson and Rice.

illegally kept in custody for fifty-two days after his conviction for possession of stolen goods was reversed by the North Carolina Court of Appeals. Specifically, Lowder, the district attorney for Union County, North Carolina, obtained an order from the Superior Court of that county requiring Allen to be kept in "safekeeping" custody after his right to release was mandated by the reversal of his conviction for insufficient evidence. Johnson, the Secretary of the North Carolina Department of Correction, and Rice, the Warden of Central Prison, had supervisory authority over the institutions in which Allen was incarcerated. We hold that Johnson and Rice played no direct or indirect role in causing Allen's incarceration beyond the date of his lawful release, and we therefore reverse the district court's summary judgment action relating to them and remand with instructions to grant them summary judgment. We hold, however, that Lowder was not entitled to absolute immunity under the circumstances of this case and affirm the district court's denial of Lowder's summary judgment motion.

## I

Allen was convicted on March 14, 1985, in the Superior Court of Union County, North Carolina for possession of stolen goods and was transferred on March 29 to the custody of the North Carolina Department of Correction. Almost one year later, on February 4, 1986, the North Carolina Court of Appeals held that there was insufficient evidence to support Allen's conviction and reversed it. *State v. Allen,* 79 N.C.App. 280, 339 S.E.2d 76 (1986). The State of North Carolina appealed that decision on March 10, and, on March 19, filed a petition for writ of supersedeas with the North Carolina Supreme Court. Under North Carolina law, however, an appeal by the state in a criminal matter does not stay the effect of a lower court's dismissal of criminal charges, *see* N.C.Gen.Stat. § 15A–1451(b) (1988), and Allen had a right to be released after the North Carolina Court of Appeals' decision became effective upon its certification to the Union County Superior Court on February 24, 1986. *See*

N.C. Rules of App.Proc. 32 (1988). The North Carolina Supreme Court granted a temporary stay of the Court of Appeals' reversal order on March 21 but, three days later, on March 24, dissolved the temporary stay and denied the State's petition for writ of supersedeas.

On February 28, 1986, after receiving a copy of the Court of Appeals' certified judgment from the Union County Superior Court, the Department of Correction released Allen to the custody of the Union County jail. On the same day, the Union County jailer asked District Attorney Lowder to obtain a safekeeping order transferring Allen back to the custody of the North Carolina Department of Correction because Allen "had previously caused trouble" in the Union County jail. Lowder prepared the requested order and presented it to the Union County Superior Court which approved and entered it. The order recited that Allen had been convicted of possession of stolen goods, that this conviction had been reversed, and that the district attorney had requested the Attorney General to appeal that reversal. Allen was accordingly transferred to Central Prison in Raleigh, North Carolina, on March 4, 1986, and accepted for safekeeping based on the Superior Court order. Two weeks later, he was transferred to another correctional facility and held there under the same safekeeping order.

On April 7, the legal advisor of the Department of Correction was notified that Allen's public defender had raised questions concerning the legality of the safekeeping order. On April 9, he received verification of the dissolution of the three-day temporary stay by the North Carolina Supreme Court, and Allen was again released to the custody of the Union County Sheriff's Department. After Allen filed a petition for writ of habeas corpus in state court, he was released from custody on April 15, 1986. The North Carolina Supreme Court affirmed the Court of Appeals' decision reversing Allen's conviction on July 2, 1986. *State v. Allen,* 317 N.C. 329, 344 S.E.2d 789 (1986).

## II

In his complaint, Allen alleges that Johnson and Rice violated his constitutional rights because they "accepted plaintiff as a safekeeper from Union County at a time when they knew or should have known that there were no charges pending against plaintiff ... [and] failed to ascertain the grounds for plaintiff's detention and imprisoned plaintiff without knowing any legal reason for his imprisonment." In his proposed amended complaint,[2] Allen alleged that Johnson, as Secretary of the Department of Correction, was responsible for failing to implement a policy directing Department of Correction employees on the proper manner with which to deal with prisoners whose convictions have been overturned on appeal and for failing to instruct Department of Correction employees about safekeeping orders.

In the first place, there is a serious question of whether these supervisory officials could be held liable for damages for the acts of their subordinates. *See Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976); *Slakan v. Porter,* 737 F.2d 368, 372–73 (4th Cir.1984), *cert. denied* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977); *see also Haynesworth v. Miller,* 820 F.2d 1245, 1259–62 (D.C.Cir.1987). Allen contends that either Johnson or Rice should have been aware of the various incidents involving Allen and that supervisory officials may be held responsible in section 1983 actions for their subordinates' actions when their indifference or tacit authorization of a subordinate's misconduct may be a factor in constitutional injuries inflicted on prisoners. *See Slakan,* 737 F.2d at 372.

Allen has made no allegation that could remotely hold Warden Rice responsible for the acts of his subordinates under the *Slakan* rationale. Further, although Allen did allege a failure on Secretary Johnson's part to implement policy directions instructing his subordinates on how to react to situations where the convictions of prisoners had been overturned on appeal, an examination of North Carolina law demonstrates that Johnson could not have avoided the problems Allen encountered by issuing reasonable prophylactic orders or regulations tailored to avoid such problems.

Under North Carolina law, prisoners normally are accepted by the Department of Correction under a sentencing court's commitment order, N.C.Gen.Stat. § 15A–1353(d) (1988), or a safekeeping order, N.C.Gen.Stat. § 162–39 (1987), and the Department cannot release them "until discharged by law." N.C.Gen.Stat. § 148–6 (1987). The North Carolina Court of Appeals certified the reversal of Allen's conviction to the Union County Superior Court where he had been convicted. The Superior Court forwarded a copy of the certification to the Department of Correction which then released Allen to the custody of the Union County Sheriff where he normally would have been unconditionally released. On Lowder's initiative, however, the Superior Court issued the "safekeeping order" in question, requiring the Department of Correction to again accept Allen into its custody. Among other things, the safekeeping statute, N.C.Gen.Stat. § 162–39 (1987), states "the prisoner shall be held for such length of time as the judge may direct.... [T]he officer in charge of the prison unit designated by the Secretary of Correction ... shall receive and release custody of the prisoner in accordance with the terms of the court order."

The Department personnel were not on notice of the circumstances leading to the issuance of the safekeeping order and had no reason to question its sufficiency. Given the lack of discretion allowed to the Department and state law, there is no reasonable way that Johnson could have de-

---

**2.** This allegation, concerning the failure to implement a policy, was one of several proposed amendments to the complaint. The district court granted the motion to amend with regard to adding Laura Perry, Tommy Allen, and Sam Kelly as defendants and denied the motion with regard to adding North Carolina Attorney General Lacy H. Thornburg. There is nothing in the record which indicates the district court's disposition of amendments which did not relate to the motion to add additional defendants, but we will assume they were allowed.

tailed a policy that would have avoided Allen's misfortunes.

█ At any rate, we are easily persuaded that, under these circumstances, these officers are entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), because "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." This results not from the absence of a clearly established constitutional right attaching to Allen's release after the reversal of his conviction but from their complete ignorance of the incidents involving Allen and the otherwise lawful requirements placed on the Department by North Carolina law. Whether viewed under the rationale of *Rizzo* or *Fitzgerald*, the district court should have granted the summary judgment motions of Johnson and Rice. They appeal its failure to grant relief under *Fitzgerald's* immunity principles, and we reverse and remand with instructions to grant their motions.

### III

█ We reach a contrary conclusion regarding Lowder's appeal. He contends that as a prosecutor he is absolutely immune from an action against him under section 1983. We disagree and affirm that portion of the district court's judgment denying Lowder's motion for summary judgment.

In *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), the Supreme Court held that prosecutors were entitled to absolute immunity "in initiating a prosecution and in presenting the State's case." The Court explicitly declined to decide whether actions which "cast [the prosecutor] in the role of an administrator or investigative officer rather than that of advocate" were similarly immunized from section 1983 damage suits. *Id.* at 430–31, 96 S.Ct. at 994–95. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), however, the Court applied a "functional" test to an official claiming absolute immunity and re-

quired him to "show that the responsibilities of his office embraced a function so sensitive as to require a total shield from liability ... [and] that he was discharging the protected function when performing the act for which liability is asserted." *Id.* at 813, 102 S.Ct. at 2735 (footnotes omitted); *see also, Mitchell v. Forsyth*, 472 U.S. 511, 521, 105 S.Ct. 2806, 2812, 86 L.Ed.2d 411 (1985); *Briscoe v. LaHue*, 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983).

Federal courts of appeal have applied this functional test, both before and after *Imbler*, to hold that a prosecutor's absolute immunity extended only to those functions which are "intimately associated with the judicial phase of the criminal process", *Imbler*, 424 U.S. at 430, 96 S.Ct. at 994. Although the specific rationales used by the different courts of appeal have varied, their decisions focus upon the same general concerns: "the centrality of the challenged conduct to the criminal justice system; the substantiality of the threat of vexatious litigation, and the extent to which that threat would inhibit performance of important public duties; and the availability of alternative mechanisms to safeguard against prosecutorial misconduct." *Haynesworth v. Miller*, 820 F.2d 1245, 1267–68 (D.C.Cir.1987) (footnotes omitted); *see also Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir.1987); *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir.) *cert. denied*, — U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Joseph v. Patterson*, 795 F.2d 549, 554–55 (6th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987); *Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir.1986); *Rex v. Teeples*, 753 F.2d 840, 843–44 (10th Cir.), *cert. denied*, 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985). One of the rules emanating from these cases is that a prosecutor is not entitled to absolute immunity when engaged in purely administrative or investigative functions. Four years before the Supreme Court's decision in *Imbler*, we reached the same conclusion in *McCray v. Maryland*, 456 F.2d 1, 3–4 (4th Cir.1972).

Lowder cannot seriously argue that his actions resulted from any advocacy role in rehabilitating Allen's conviction. There is no question that Allen was entitled to release after his conviction was reversed for insufficient evidence. Even if the subsequent procedures in the North Carolina Supreme Court had altered that reality, it was not Lowder but the North Carolina Attorney General who pursued those appellate procedures. Lowder did not himself participate in the presentation of the state's appeal, and his action in securing Allen's continued incarceration was unrelated to it.

Lowder's actions instead came as a result of the Union County jailer's inexplicable decision to seek Allen's continued incarceration in a state correctional facility because Allen had previously "caused trouble" in the Union County jail. Whether or not the jailer, an employee of the Sheriff's Department, violated his duties in seeking the order, it is the Sheriff that by state statute is charged with the care and custody of the county jail, and the safekeeping statute, N.C.Gen.Stat. § 162–39 (1987), is located within the statutory chapter describing his authority and responsibility towards county prisoners. At best, Lowder was acting in a purely administrative capacity when he assisted the Sheriff's office in obtaining the safekeeping order from the Superior Court and is, therefore, not entitled to absolute immunity.[3]

### IV

In view of the above, the district court's decision denying summary judgment is affirmed in part, reversed in part, and remanded with instructions.

REVERSED IN PART; AFFIRMED IN PART; AND REMANDED WITH INSTRUCTIONS.

---

**3.** The issue of any qualified immunity for Lowder was not briefed either in the district court or in this court, and we therefore do not express an opinion on the merits of such a claim.