**Bernard H. EHRLICH,**
**Plaintiff–Appellant,**

v.

**Rudolph W. GIULIANI; Mary T.**
**Shannon, Defendants–Appellees.**

No. 89–2681.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1990.

Decided Aug. 8, 1990.

Arthur Mark Schwartzstein, Washington, D.C., for plaintiff-appellant.

Steven Edward Obus, Asst. U.S. Atty., argued (Benito Romano, U.S. Atty., Nancy Kilson, Asst. U.S. Atty., Sarah Thomas–

Gonzalez, Sp. Asst. U.S. Atty., New York City, on brief), for defendants-appellees.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge:

Bernard *H.* Ehrlich (Ehrlich) appeals a grant of summary judgment in favor of the defendants in connection with his Fourth and Fifth Amendment claims against two federal prosecutors who inadvertently froze his investment account. In June of 1987, Rudolph Giuliani (Giuliani) was the United States Attorney for the Southern District of New York, and Mary Shannon (Shannon) was an Assistant United States Attorney in that office. During their investigation of the Wedtech scandal, *see Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 604–06 (2d Cir.1988), Shannon obtained a grand jury subpoena duces tecum requesting information about investment accounts maintained by Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), the broker for several indicted defendants, including Bernard *G.* Ehrlich, who was a New York City attorney with nearly the same name as the plaintiff in this case, but who is not the same person. While Giuliani was not personally involved, the subpoena was signed in his name pursuant to office policy.

On the subpoena form, the prosecutors listed the first and last names of the indicted defendants with no other identifying information, such as a middle initial, address, or social security number. In its response to the subpoena, Merrill Lynch inadvertently included information about an account held by plaintiff Ehrlich, an attorney residing in Virginia with no connection to the Wedtech investigation, and a person other than the New York attorney, Bernard *G.* Ehrlich. The prosecutors obtained an order of the United States District Court for the Southern District of New York on June 3, 1987, freezing the accounts of the Wedtech defendants (of whom Bernard *G.* Ehrlich was one) to preserve the assets for forfeiture proceedings. Not realizing that one of the accounts disclosed by Merrill Lynch belonged to someone other than an indicted Wedtech defendant, the prosecutors froze plaintiff's account as well. While the indicted Wedtech defendants were informed of the court order, neither the prosecutors nor Merrill Lynch informed plaintiff Ehrlich that his account had been frozen.

Before the subpoena had issued, plaintiff had given power of attorney to Whitelaw, Dickens & Company (Whitelaw) to manage his investment account. Shortly after the court order was granted, Frank Joesting, a Whitelaw agent, learned that the account was frozen when he attempted to order a transaction. Whitelaw ceased to trade on the account, but failed to inform plaintiff of that fact. Ehrlich first realized that his account was frozen in early January of 1988 when he telephoned Whitelaw to inquire about the account. After being told that his account was frozen and that he was supposed to be an indicted defendant in the Wedtech scandal, Ehrlich telephoned Merrill Lynch to investigate. Merrill Lynch then contacted the United States Attorney's office in New York. When the prosecutors realized the error, they immediately released the account.

Thereafter Ehrlich filed a *Bivens*-type damage claim in federal district court in the Eastern District of Virginia, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against defendants Giuliani and Shannon alleging that they had violated his Fourth Amendment rights by conducting an unlawful search and seizure of his brokerage account and that they had denied to him his rights to due process under the Fifth Amendment. In that context, he argues that the subpoena obtained by the prosecutors was excessively broad and also that defendants were culpably negligent in failing to scrutinize the records produced by Merrill Lynch to ensure that only the accounts of Wedtech defendants were included in the order of

the United States District Court for the Southern District of New York.

Defendants filed a motion to dismiss under Rule 12(b) of the Fed.R.Civ.P. for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, improper venue, absolute immunity, and qualified immunity.[1] The district court found that the prosecutors were acting within the scope of their prosecutorial duties and therefore enjoyed absolute immunity from personal liability for their actions. The court found it unnecessary to reach any of the other grounds for dismissal and granted the motion to dismiss. Ehrlich then instituted this appeal from that dismissal. Because we find that locating and preserving assets of indicted defendants for forfeiture proceedings falls within a prosecutor's advocacy duties, we agree that Giuliani and Shannon are entitled to absolute immunity from liability for their actions and affirm the dismissal by the district court.

## ANALYSIS

In *Imbler v. Pachtman,* 424 U.S. 409, 427, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor is protected by "the same absolute immunity under § 1983 as [he] enjoys at common law."[2] Such protection alleviates "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423, 96 S.Ct. at 991. In addition, potential liability could deter prosecutors from revealing errors and from responding quickly once they become aware of a problem.

While shielding prosecutors against personal liability for their actions may increase the risk of abuse, the Supreme Court noted in *Imbler* the existence of other means of disciplining prosecutors. For example, civil immunity does not preclude criminal liability under 18 U.S.C. § 242 for the willful deprivation of constitutional rights. "Moreover, a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers." *Imbler,* 424 U.S. at 429, 96 S.Ct. at 994. Those alternative remedies do not enable the individual to recoup damages from wrong, but "[i]n this instance it has been thought in the end better to leave undressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Id.* at 428, 96 S.Ct. at 994 (quoting Judge Learned Hand in *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949)).

In *Imbler* the Supreme Court limited its holding of absolute immunity to the initiation and pursuing of a criminal prosecution. The Court explicitly declined to decide the question of whether absolute immunity applies to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." 424 U.S. at 430–31, 96 S.Ct. at 995 (footnote omitted). Subsequent case law indicates that a prosecutor is entitled only to a qualified "good faith" immunity when performing investigative functions. *See, e.g., Marrero v. City of Hileah,* 625 F.2d 499, 508 (5th Cir.1980). *See generally Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978) (dis-

1. Defendants subsequently waived the lack of personal jurisdiction and, impliedly, also waived lack of venue.

2. While *Imbler* discussed absolute immunity for state officials from liability under § 1983, the analysis extends to *Bivens*-type claims against federal actors. In *Butz v. Economou,* 438 U.S.

478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978), Justice White wrote, "[W]ithout congressional directions to the contrary, we deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."

cussing official immunity).[3]

The question arises as to whether the prosecutorial conduct attacked by Ehrlich falls within the range of "advocacy" duties warranting absolute immunity. The line between a prosecutor's advocacy and investigative duties is not clearly defined. The Supreme Court in *Imbler* recognized that "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. In close cases courts drawing the line and deciding whether absolute immunity applies generally look to the following factors:

> the centrality of the challenged conduct to the criminal justice system; the substantiality of the threat of vexatious litigation, and the extent to which that threat would inhibit performance of important public duties; and the availability of alternative mechanisms to safeguard against prosecutorial misconduct.

*Allen v. Lowder*, 875 F.2d 82, 85 (4th Cir. 1989) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1267–68 (D.C.Cir.1987)) (footnotes omitted).

■ We agree with the district court that Giuliani and Shannon were engaged in more than just investigative activity. One of the most important duties of a prosecutor pursuing a criminal proceeding is to ensure that defendants, or in this case the assets, are present at trial. Thus, the Tenth Circuit has explained that the "purpose of obtaining an arrest warrant is to ensure that the defendant is available for trial and, if found guilty, for punishment ... a prosecutor's seeking a warrant for the arrest of a defendant against whom he has filed charges is part of his 'initiation of a prosecution' under *Imbler.*" *Lerwill v. Joslin*, 712 F.2d 435, 437–38 (10th Cir.

1983). In this case, Giuliani and Shannon obtained an indictment from a grand jury and then sought to locate and preserve the defendants' assets for forfeiture proceedings pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1963(e). While their actions involved investigation into the amount and location of assets, the prosecutors had already made the decision to initiate criminal proceedings and were preparing their case for trial.

Considering the potential burden on prosecutors, we find that imposing the threat of personal liability in the context of a prosecution under the RICO statute would unduly hinder the prosecutor's performance. Proceedings under the RICO statute often involve sophisticated defendants in complex cases. Potential defendants fearing forfeiture proceedings may try to hide their assets, forcing the prosecutor to cast a broad net in the search for information about those assets. While care should be taken before requesting a restraining order, the potential for a mistake could deter a prosecutor from exercising independent judgment if not shielded from liability. Courts issuing restraining orders should review the application to minimize the risk of error, but if a mistake is made and the wrong asset is frozen, the prosecutor should not have to face personal liability. *See Atkins v. Lanning*, 556 F.2d 485, 487–88 (10th Cir.1977) (district attorney absolutely immune from suit for naming wrong person in arrest warrant).[4]

Plaintiff relies upon the Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), to support his argument that Giuliani and Shannon are entitled to claim only qualified as opposed to absolute immunity. In *Mal-*

---

3. Generally, courts apply qualified immunity to actions extraneous to the judicial process. *See, e.g., Allen v. Lowder*, 875 F.2d 82, 85–86 (4th Cir.1989) (refusing to apply absolute immunity where a prosecutor, after a prisoner's successful appeal, took actions to keep a person in custody); *Powers v. Coe*, 728 F.2d 97, 103–04 (2d Cir.1984) (applying qualified immunity to disclosures to the press, but absolute immunity to any alleged abuse of the grand jury process).

4. Counsel for the defendants has informed this court that the United States Attorney's Office in New York, in part because of this litigation, has implemented measures designed to prevent a recurrence of the mistake made in this case. While such steps should have been taken before the mistake occurred, that does not affect the need to afford absolute official immunity.

**1224**

*ley,* the Court held that a police officer who presented a complaint and supporting affidavit for an arrest warrant which did not establish probable cause could assert only qualified immunity. Ehrlich contends that the prosecutors in this case obtained an invalid subpoena duces tecum and restraint order in a similar fashion. The opinion in *Malley,* however, explicitly distinguished an analogy between a police officer seeking an arrest warrant from a prosecutor seeking an indictment. 475 U.S. at 340–43, 106 S.Ct. at 1095–97. That analogy is applicable in this case for several reasons.

The police officer seeking an arrest warrant is not too unlike a complaining witness who, unlike a prosecutor, was not absolutely immune at common law. *Id.* at 340–41, 106 S.Ct. at 1095–96. Second, the police officer's application for an arrest warrant is "further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." 475 U.S. at 342–43, 106 S.Ct. at 1097. The actions at issue in this case, the locating and the freezing of accounts of indicted defendants, are nearly as involved in the judicial phase as the seeking of an indictment. As the Court noted in *Malley,* "seeking an indictment is but the first step in seeking a conviction." *Id.* at 343, 106 S.Ct. at 1097. By the same token, seeking a restraining order is but the first step in seeking forfeiture of assets. Finally, as the Supreme Court has pointed out, prosecutors face discipline from the professional standards enforced by the organized bar. In contrast, "[t]he absence of a comparably well-developed and pervasive mechanism for controlling police misconduct weighs against allowing absolute immunity for the officer." *Id.* at 343 n. 5, 106 S.Ct. at 343 n. 5.

■ As a final consideration, we note that it does not matter in this case that the plaintiff was not an indicted defendant. The prosecutors intended to act only against indicted persons. However, absolute immunity applies if the action at issue was taken in furtherance of prosecutorial duties even though the prosecutors inad-

vertently injured an innocent person. *Cf. Atkins v. Lanning, supra.*

Accordingly, we affirm the district court's conclusion that defendants are entitled to absolute immunity from liability in this case.

AFFIRMED