**Doyle JACKSON, Nancy Jackson, and James Jackson, as Next Friend of James Jackson, Jr.**

v.

**LIBERTY COUNTY, et al.**

No. 1:93–CV–415.

United States District Court,
E.D. Texas,
Beaumont Division.

July 26, 1994.

---

James Saranello, Houston, TX, for plaintiffs.

David E. Bernsen, Paula Dunham, Bernsen, Jamail & Goodson, Beaumont, TX, for defendants.

## *MEMORANDUM OPINION AND ORDER*

COBB, District Judge.

Before the court are the Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment and the Defendant's Motion to Correct Summary Judgment Motion. The plaintiff has not responded to the motions. After holding a hearing on the matter, this Court is of the opinion that the Motions should be granted.[1]

### Factual Background

This suit is based on events which occurred on the evening of June 28, 1993. On that evening, James Dean Jackson, Sr. and his friend Robert Booth found themselves at a beer joint owned by Jackson's friend, Nick Sanders. After Jackson had approximately three beers, Jackson and Booth decided to pay a visit to Jackson's erstwhile girlfriend, Charlotte Johnson. To Jackson's chagrin, his wife Becky and their two children arrived at Charlotte Johnson's shortly after he did. Mrs. Jackson parked her burgundy Cadillac directly behind her husband's truck. The Jackson's children, James Jr. and Natalie, aged 5.5 and 1 respectively, stayed in the Cadillac.

Tempers flared and the Jacksons began to argue in Ms. Johnson's front yard. However, the argument was cut short when Booth informed Jackson that Charlotte Johnson had called the law. Because his truck was blocked in, Jackson left Johnson's residence in his wife's Cadillac and proceeded to his parents' house. His parents, Doyle and Nancy Jackson agreed to watch the children. Jackson then returned to Johnson's house in the Cadillac to check on his wife.

Meanwhile, James Fenton, Deputy Sheriff of Liberty County, Texas, was patrolling the southern end of the county. He received a call from the dispatcher reporting a suspicious person driving in Shannon Road in the vicinity of Ms. Charlotte Johnson's residence. Deputy Fenton answered the call. As he turned onto Shannon Road, he noticed the burgundy Cadillac pass him travelling in the opposite direction. The Cadillac had a burned-out headlight[2] and was moving very slowly. The Deputy noticed that the driver was a slender shirtless white male. The driver was not wearing a seat belt.[3] Because the radio dispatcher had not described the suspicious automobile, Fenton proceeded to Johnson's house. However, as he approached the house and noticed that no car was present, he became suspicious of the Cadillac. Fenton turned around and activated his car's emergency lights. However, the Cadillac, which was already ahead of Fenton, accelerated and disappeared from sight.[4] Af-

---

1. Because the court has reviewed matters outside the pleadings, the defendants' motion will be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b), 56; *Washington v. Allstate Insurance Co.,* 901 F.2d 1281 (5th Cir.1990).

2. *See* Tex.Rev.Civ.Stat.Ann. art. 6701d §§ 109, 110.

3. *See Id.* § 107C.

4. *See Id.* §§ 161, 166, 186.

ter a futile search for the car, Fenton returned to Charlotte Johnson's house.

Ms. Johnson identified the Cadillac's driver as James Dean Jackson and described the circumstances surrounding his recent visit to her residence. Johnson gave the officer directions to Jackson's house and his nearby parents' house, where she suspected that he took his children. Deputy Fenton drove to Jackson's trailer. There was no sign of Jackson or the Cadillac.

In fact, Jackson had recently returned from the second trip to Charlotte's to check on his wife. He parked the car at his parents' house and walked over to his nearby trailer. However, at the edge of his yard, Jackson observed the authorities at his residence. Without being detected, he returned to his parents' house. He told his parents that "the laws [are] at my house, and they may be looking for me."[5] He then departed.

After the unsuccessful visit to Jackson's trailer, Deputy Fenton proceeded to the home of Jackson's parents. He noticed the burgundy Cadillac parked in the driveway. Its hood was warm to the touch and a call to the dispatcher verified that it was registered to James Jackson. After being joined by Deputies Thornton and Trahan, Deputy Fenton knocked on the front door. Nancy L. Jackson, James Dean Jackson's mother and a plaintiff in this case, opened the door and began speaking with Deputy Fenton. Fenton asked for James Jackson.

Although there are minor inconsistencies as to what followed, it is undisputed that Doyle Jackson, James Jackson's father, invited the officers inside the house. As the deputies walked inside, they noticed two small children. Once inside, Deputies Thornton and Trahan remained silent while Deputy Fenton spoke with the Jacksons. As the discussion progressed, it appears that both Deputy Fenton and Doyle Jackson began to raise their voices. The conversation reached

a crescendo when Deputy Fenton asked one of the children for his father's name.[6] Doyle Jackson insisted that Fenton leave the children alone. Sensing that further conversation would be fruitless, the Deputies left the Jackson residence.

The plaintiffs, Doyle Jackson, Nancy Jackson, and James Jackson, as next friend of James Jackson, Jr., filed this suit on August 30, 1993, alleging that Deputy Fenton violated their Constitutional rights during the exchange that took place at the Jackson house on the evening of June 28, 1993. Specifically, the plaintiffs claim that Deputy Fenton harassed and humiliated them. Furthermore, the plaintiffs also claim in their complaint that Liberty County and its Sheriff, O.J. Stewart, 1) failed to train and supervise its officers, and 2) instituted a policy that allowed deputies to use "excessive, abusive, and harassing tactics."

**Discussion**

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. FED.R.CIV.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■ 42 U.S.C. § 1983[7] provides a Federal remedy for deprivations of Constitutional rights by authorizing suits against local public officials and governmental entities. *See Monroe v. Pape*, 365 U.S. 167, 174, 81 S.Ct. 473, 477, 5 L.Ed.2d 492 (1961). In order to recover under § 1983, a civil rights plaintiff

---

5. Deposition of James Dean Jackson, at 37.

6. The child was in fact James Jackson, Jr.

7. 42 U.S.C. § 1983 provides in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

must prove two elements: (1) deprivation of a Federally protected right "secured by the Constitution and laws of the United States," and (2) state action taken under color of law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982) (quoting *Flagg Brothers v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978)). As a threshold matter, this Court must therefore determine whether the plaintiff has alleged the deprivation of any rights secured by the Constitution and the laws of the United States. After a consideration of the applicable caselaw, the court is convinced that the plaintiff has failed to clear this initial hurdle.

### Deputy Fenton

 It is clear that Deputy Fenton did not touch or strike any of the plaintiffs, nor did he physically threaten them in any way. Nor can the plaintiffs claim that the Deputies were not welcome in their house: Doyle Jackson invited the Officers into the house and he never asked them to leave.[8] It appears that the gravamen of the plaintiffs' claim is Deputy Fenton's perceived attitude the night in question. Specifically, the plaintiffs complain that Fenton was rude and unprofessional. Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment and cannot withstand summary judgment. In *Slagel v. Shell Oil Refinery*, 811 F.Supp. 378, 382 (C.D.Ill.1993), *aff'd*, 23 F.3d 410 (7th Cir.1994) (table), the court noted: "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." (citations omitted); *See also Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir.1987); *Wilson v. Southwest Airlines*, 517 F.Supp. 292, 304–05 (N.D.Tex.1981). Consequently, Deputy Fen-

ton is entitled to summary judgment on all claims brought against him.[9]

### Sheriff Stewart and Liberty County

 The plaintiffs also claim that Sheriff Stewart and Liberty County are liable for 1) a failure to supervise or train Deputy Fenton, and 2) a custom or policy allowing deputies to employ excessive, abusive, and harassing tactics. Because the plaintiffs have not established an underlying Constitutional violation, these claims necessarily fail. *See Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986).[10]

### Conclusion

For the above reasons, it is HEREBY ORDERED, ADJUDGED, and DECREED that the Defendants' Motion for Summary Judgment and Defendant's Motion to Correct are GRANTED.

---

8. *Compare Augustine v. Doe*, 740 F.2d 322 (5th Cir.1984) (discussing warrantless, *nonconsensual* entry into plaintiff's house).

9. *See also Archuleta v. McShan*, 897 F.2d 495 (10th Cir.1990).

10. Even assuming the existence of an underlying constitutional violation, the plaintiffs have not provided a scintilla of evidence to support their claims against Sheriff Stewart and Liberty County.