John A. LANGWORTHY, Plaintiff,

v.

Robert L. DEAN, et al., Defendants.

No. Civ.A. AW–98–2631.

United States District Court,
D. Maryland.

Feb. 8, 1999.

John A. Langworthy, pro se.

J. Joseph Curran, Jr., Attorney General of Maryland and Elisabeth A. Sachs, Assistant Attorney General, for defendants Robert L. Dean, Richard P. Crane, and Sue Dudley.

Charles W. Thompson, Jr., Montgomery County Attorney, Joann Robertson, Chief, Litigation, and Sharon V. Burrell, Assistant County Attorney, for defendant Douglas M. Duncan.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Currently pending before the Court are Defendant Douglas M. Duncan's Motion to Dismiss, Defendants Dean, Crane and Dudley's Motion to Dismiss, Plaintiff's Motion for Leave to Amend Complaint, Plaintiff's Motion to Invoke Americans with Disabilities Act, Plaintiff's Motion to Invoke 42 U.S.C. § 1988, Plaintiff's Motion to Invoke Convention Against Torture, Plaintiff's Motion to Waive Highlighting, Plaintiff's Motion to Suspend Local Rule 103.6 a, Plaintiff's Motion for Leave to File Surreply Defendants' Motion for Summary Judgment, and Plaintiff's Motion for Leave to File Third Amended Civil Rights Violations Complaint. No hearing is deemed necessary. Local Rule 105.6 (D.Md.) The Court has considered the motions, the op- positions thereto, and the entire record. For the reasons set forth below, the Court will grant the motions of the Defendants, and will deny the motions of the Plaintiff.

### I

Plaintiff, John Langworthy, has brought suit against the former State's Attorney Robert L. Dean, Prosecution Management Coordinator Richard P. Crane, Legal Assistant Sue Dudley and County Executive Douglas M. Duncan. As the Plaintiff is a *pro se* litigant, the Court has attempted to read his complaint in as liberal a fashion as possible. Plaintiff's complaint is a rambling document which includes claims which are not cognizable, and claims which are not appropriately brought before the Court. Primarily, Langworthy alleges that these Defendants failed to investigate and prosecute his claims against Dr. Juvenal Goicochea.[1] Langworthy claims that during an examination on November 27, 1992, Dr. Goicochea:

> "without any accepted medical purpose for the brutally prolonged period of approximately five (5) minutes ... violently and perversely assaulted, stabbed, battered, abused, tortured, maimed and experimented upon the perfectly healthy sexual anatomy of the left spermatic cord inside the Plaintiff's left inguinal canal with actual malice and excessive force against the victim's will and without the victim's informed consent by the doctor's [sic] having knowingly used his left index finger as a weapon for the criminal purpose of causing the victim serious and permanent physical injury."

Amended Complaint at 2, ¶ 3.

Langworthy asserts that he informed the Defendants of Dr. Goicochea's actions, and that by failing to adequately investigate and prosecute Dr. Goicochea, the Defendants have violated his due process rights and violated numerous treaties to which the United States is a signatory party. Langworthy states that he has

---

1. Dr. Goicochea is not a party to the instant suit.

tried to present his evidence to the Defendants, yet they have refused to speak to him. He also asserts that Defendants Crane and Dean "unlawfully denied and failed to inform Mr. Langworthy of his constitutional right to proceed as a private prosecutor for the crimes allegedly committed by Dr. Goicochea." Amended Complaint at 6, ¶ 11. Langworthy further contends that Defendant Duncan promised him that the police would contact him, but he was never contacted by police. He asserts that "the Defendants [have] made themselves unlawfully inaccessible to Plaintiff Langworthy by having also repeatedly refused to meet with him." Amended Complaint at 10, ¶ 17.

According to Langworthy, the Defendants are liable to him under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as under the Maryland Declaration of Rights. In addition to damages, the Plaintiff seeks an order compelling the Defendants to investigate and prosecute Dr. Goicochea.

## II

Defendant Duncan and Defendants Dean, Crane and Dudley have filed separate motions to dismiss. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper only if the nonmovant cannot prove any set of facts that would entitle her to relief. *See Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding whether to grant a motion to dismiss based on Rule 12(b)(6), the Court must "accept the well-pled allegations of the complaint as true, and ... construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,*

120 F.3d 472, 474 (4th Cir.1997) (citing *Little v. Federal Bureau of Investigation,* 1 F.3d 255, 256 (4th Cir.1993)). Defendants maintain that even if the complaint is read in the light most favorable to the Plaintiff, it fails to state a claim under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and under the Maryland Declaration of Rights. Defendants Dean, Crane and Dudley contend that all claims for damages under 42 U.S.C. § 1983 against them in their official capacities must be dismissed because of sovereign immunity as guaranteed by the Eleventh Amendment of the United States Constitution, and because of prosecutorial immunity. Defendant Duncan argues that as Plaintiff's allegations are brought against him in his official capacity, the claims are actually being brought against Montgomery County, Maryland. Duncan contends that Plaintiff has failed to state a claim under § 1983 against Montgomery County because he has failed to show that the County has a policy which was the "moving force" behind the alleged violation of his federally protected rights. All of the Defendants argue that Plaintiff has failed to state an claim for conspiracy under 42 U.S.C. §§ 1985 and 1986, and that Plaintiff is unable to maintain a suit pursuant to 42 U.S.C. § 1981. The Court agrees that Plaintiff's claims must be dismissed.

## III

Plaintiff's Amended Complaint indicates that he is suing the Defendants in their "official administrative capacities." [2] Amended Complaint at 2, ¶ 3. However, a suit under § 1983 against a governmental official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office ... As

---

**2.** Langworthy has sought to amend his complaint so that his claims would be brought against the Defendants in both their individual and their official capacities. However, as will be discussed later, if the claims for monetary damages were brought against Defendants in their individual capacities, they would be dismissed because of the doctrine of

prosecutorial immunity (for Defendants Dean, Crane and Dudley), and qualified immunity. *See Ehrlich v. Giuliani,* 910 F.2d 1220 (4th Cir.1990); *S.P. v. City of Takoma Park et al.,* 134 F.3d 260 (4th Cir.1998). Therefore, the amendment would be futile, and his motions to amend will be denied.

such, it is no different from a suit against the [governmental entity] itself." *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, Defendants Dean, Crane and Dudley argue that Langworthy's claims against them are really claims against the State of Maryland. Defendant Duncan also rightly argues that the suit against him is in actuality a suit against Montgomery County, Maryland.

As Defendants Dean, Crane and Dudley contend they are state officials, they also claim that the damages claims against them in their official capacities are barred by the Eleventh Amendment. The Supreme Court has held that in an action brought under 42 U.S.C. § 1983, the " 'federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury.' " *Quern v. Jordan,* 440 U.S. 332, 338, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (citing *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Further, "[a]n unconsenting state enjoys Eleventh Amendment protection against a private party's suit for damages. It is equally well settled that any arm of the state is protected by such immunity. To determine if a suit is against an arm of the state, courts look to the essential nature and effect of the proceedings as well as the nature of the entity being sued." *Keller v. Prince George's County, et al.,* 923 F.2d 30, 32 (4th Cir.1991) (citations omitted). The Supreme Court has

> identified six factors considered useful in determining Eleventh Amendment immunity issues: (1) the characterization of the entity by the language of its creating statutes; (2) the origin of the entity's funding; (3) whether the state is financially responsible for the liabilities and obligations incurred by the entity; (4) the source of the power to appoint the entity's officers or members; (5)

whether the function performed by the entity is traditionally state or municipal; and (6) whether the entity's actions are subject to a veto by the state.

*Ristow v. South Carolina Ports Auth.,* 58 F.3d 1051, 1052 (citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979)).

In *Lowery v. Prince George's County,* 960 F.Supp. 952 (D.Md.1997), the court looked at Maryland law and applied the *Ristow* factors to the claim that State's Attorneys and their staff are entitled to Eleventh Amendment immunity. The *Lowery* court held "[t]here can be no doubt that the State's Attorney for each county and the City of Baltimore long have been considered to be state officials in Maryland and, indeed, that they meet the *Ristow* indicia in terms of statutory underpinning, the duties and functions of the office and state power over the office." *Id.* at 956. The *Lowery* court, however, did not decide whether the State's Attorneys were entitled to Eleventh Amendment immunity. The court stated:

> [T]his court has little before it with which to address the critical factor of which fiscal font would be tapped to satisfy a judgment against a State's Attorney. Even the source of funding for the office is somewhat equivocal. While it is not imperative to a finding of Eleventh Amendment immunity that a judgment against the State's Attorney would be enforceable against the state treasury, it seems that there must be some rational nexus to state fiscal concerns. In this case, the court simply does not have before it sufficient facts to make the practical judgment reached by the court in *Ristow* and the issue of whether the State's Attorney is entitled to Eleventh Amendment immunity cannot be decided at this point.

*Id.* at 956–57.

This Court also lacks sufficient facts to make this determination. As Plaintiff's claims must be dismissed on prosecutorial

immunity, qualified immunity, and other grounds, this Court, like the *Lowery* court will reserve judgment on the Eleventh Amendment argument.

## IV

■ Defendants Dean, Crane and Dudley argue that Langworthy's requests for damages is barred by the doctrine of prosecutorial immunity. "As a general proposition, federal courts do not involve themselves in a prosecuting attorney's decision to prosecute, and a particular prosecution cannot be compelled." *Wellman v. West Virginia*, 637 F.Supp. 135, 136 (S.D.W.V. 1986). Furthermore, the Supreme Court has held that prosecutor is entitled to absolute prosecutorial immunity from money damages for acts taken in "the initiation and pursuit of a criminal prosecution." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

■ In this case, Langworthy primarily attacks the decision not to prosecute Goicochea, and the supposed failure to investigate the alleged crime. However,

> the decision of whether or not to prosecute in these instances was a discretionary decision, not compelled by any particular statute or legislative mandate, and further was a decision in determining how to apply [the State's] resources to best serve the public interest. Thus, the decision of whether to prosecute on the basis of [Langworthy's allegations] fell within the quasi-judicial functions of the prosecutor and accordingly, absolute immunity attaches to the decision not to prosecute in this instance.

*Wellman*, 637 F.Supp. at 138.

Moreover, this absolute immunity covers not only Defendant Dean, but also the members of his staff, Crane and Dudley. *See Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir.1995) (citations omitted) ("Because absolute immunity is essential to safeguarding the integrity of the judicial process, it extends to those performing functions closely associated with that process.... This includes not only officials performing discretionary acts of a judicial nature, ... but also individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process."); *see also Jean v. Collins*, 155 F.3d 701 (4th Cir.1998) (citing *Hill*). Further, even if Langworthy was allowed to amend his complaint to assert his claims against Defendants Dean, Crane, and Dudley in their individual capacities, absolute prosecutorial immunity would extend to the decisions not to prosecute. *See Ehrlich*, 910 F.2d 1220.

■ Defendants Dean, Crane and Dudley argue that the decisions not to investigate Langworthy's claims against Dr. Goicochea further are also covered by absolute prosecutorial immunity. They claim that these decisions "closely relate to the exercise of a judicial or quasi-judicial function." (Defendants Dean, Crane and Dudley's Memorandum in Support at 6). The Supreme Court said in *Buckley*, however, that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." [3] 509 U.S. at 273, 113 S.Ct. 2606.

Further, the Court stated:

> They argue that Defendants Dean and Dudley, "in her role as a legal assistant and liaison to the grand jury on behalf of State's Attorney Dean, were acting in their capacities as officers of the court." Defendants Dean, Crane, and Dudley's Memorandum in Support at 9. The Court agrees that these actions are entitled to prosecutorial immunity *See Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. Even if

**3.** Defendants Dean, Crane, and Dudley argue that Plaintiff's claim in Count III that Dean and Dudley "administratively refused" to comply with a court order from the Circuit Court for Montgomery County to present to the Foreperson of the Grand Jury certain materials, in violation of his right to due process and equal protection under the law is also barred by absolute prosecutorial discretion.

There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

. . .

. . . A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.

*Id.* at 273–74, 113 S.Ct. 2606.

■ Therefore, investigative acts taken by a prosecutor prior to the probable cause determination are subject to qualified instead of absolute immunity. The Court believes that the failure to act prior to the probable cause determination should be subject to the same standard as well. Thus, the Court will apply the qualified immunity standard to all of the Defendant's failure to investigate Langworthy's claims more thoroughly.

■ The Fourth Circuit Court of Appeals has recently stated that "[i]t is a well settled proposition that government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *S.P. v. City of Takoma Park et al.*, 134 F.3d at 265 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Further, "[w]hen determining whether law enforcement offi-

cers are entitled to qualified immunity," the Court must "(1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable [official] would have understood that the conduct at issue violated the clearly established right." *Id.* " 'If the right was not clearly established at the relevant time or if a reasonable [official] might not have known that his or her conduct violated that right, the [official] is entitled to immunity.' " *Id.* (citing *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir.1996)).

The right Plaintiff alleges was violated is his right to have his claims investigated by the police and the State's Attorney. However, no such right exists. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); *see also Walker v. Schmoke*, 962 F.Supp. 732, 733 (D.Md.1997) ("[N]o federal appellate court, including the Supreme Court (and the appellate courts, not the trial courts, make legal policy) has recognized that there is a federally enforceable right for the victim to have criminal charges investigated at all, let alone with vigor or competence.") Further, the fact this right does not exist is supported by the fact that a right to compel the prosecution of criminal activity does not exist. *See also Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir.1988) ("Sattler's counsel suggested that Sattler had an enforceable right as a member of the public at large and as a victim to have the defendants criminally prosecuted. . . . There is, of course, no such constitutional right. . . ."); *Doe v. Mayor and City Coun-*

---

prosecutorial immunity did not attach, these actions would at most be violations of state law, which cannot be the basis of a due process claim. *See Weller v. Dep't of Social Servs. for Baltimore*, 901 F.2d 387, 391 (4th Cir.

1990) ("[I]t is well settled that violations of state law cannot provide the basis for a due process claim.") The materials were subsequently submitted to the grand jury.

*cil of Pocomoke City,* 745 F.Supp. 1137, 1139 (D.Md.1990) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public. Therefore, no one member of the public has a right to compel a public official to act."); *Sellner v. Panagoulis, et al.,* 565 F.Supp. 238, 249 (D.Md.1982), *aff'd without opinion,* 796 F.2d 474 (4th Cir.1986) ("This Court does not know of any right afforded by either the Constitution or laws of the United States to private persons to compel a state to prosecute criminal activity."); *Beverly v. State,* 349 Md. 106, 707 A.2d 91, 98 (1998) ("It is well-settled that the determination of which criminal charges, if any, to bring is a matter of prosecutorial discretion."). As there is not a clearly established constitutional right to have claims of criminal activity by a private actor investigated, the doctrine of qualified immunity will bar these claims.[4]

▮ Plaintiff argues that his fight to have his claims investigated and prosecuted stems from various treaties of which the United States is a signatory party. In his complaint, Plaintiff relies on the International Covenant on Civil and Political Rights ("ICCPR"). DEP'T ST. BULL., Jan. 16, 1967 at 111, 999 U.N.T.S. 171. This document, however, is inapplicable. The ICCPR does state in Article 7 that "[n]o one shall be subject to torture or to cruel, inhuman or degrading treatment or punishment. In particular, no one shall be subject without his free consent to medical or scientific experimentation." This language alone, however, does not compel government to act against private wrongs.

Langworthy also argues that by refusing to prosecute Dr. Goicochea, the Defendants have acquiesced to the "torture" inflicted by Dr. Goicochea on him. Langworthy claims that this action is in violation of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. Dec. 10, 1984, *entered into force* June 26, 1987; for the U.S. Nov. 20, 1994, S. TREATY DOC. NO. 100–20, 23 I.L.M. 1027 (1984); 24 I.L.M. 535 (1985). Dr. Goicochea's alleged conduct, however, is not within the definition of torture as referenced by that document. Part I, Article I of that document defines torture as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

Langworthy has not argued that Dr. Goicochea inflicted pain on him for any of these purposes. Instead, he has made allegations that Dr. Goicochea acted out of personal animus, not for any discriminatory reasons.

Further, a careful reading of this language suggests that the public official must know about the activity before it, or as it occurs, not afterward. Moreover, although Langworthy claims that this document requires the Defendants to act, it does not state that every allegation of torture must be investigated. Instead, it provides in Article 6 that a "State party"[5] shall take action "[u]pon being satisfied, after an examination of information available to it, that the circumstances so war-

---

4. This includes Langworthy's claim that Duncan failed to have the police contact him after he promised to do so. As the police were not required to investigate Langworthy's claims, any failure to refer them to Langworthy would not violate Langworthy's rights.

5. As the United States is the signatory party, the term "State Party" probably refers to the federal government not the individual states.

rant." Nothing in this language suggests that if the "State party" is not satisfied that the circumstances warrant further action, it must still act. It is clear that the Defendants in this case considered the information available to them and found that the circumstances did not warrant further investigation or prosecution. As the treaties do not provide the Plaintiff with a clearly established right to have his claims investigated and prosecuted, all of the Defendants are protected from suit by qualified immunity.[6]

## V

■ As mentioned previously, Langworthy's suit against Duncan is really a suit against Montgomery County. "In order to recover under § 1983, a civil rights plaintiff must prove two elements: (1) a deprivation of a federally protected right 'secured by the Constitution and laws of the United States,' and (2) state action taken under color of law." *Jackson v. Liberty County, et al.*, 860 F.Supp. 360, 362–63 (E.D.Tex.1994) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922. 930, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Plaintiff must show a causal link between a policy or practice of Montgomery County and the alleged deprivation of his rights. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). However, as has been previously explained, Plaintiff cannot show that any of his federally protected rights were violated. Thus, the Court believes that it would be impossible for the Plaintiff to establish the necessary link. Therefore, Plaintiff's § 1983 claims must also be dismissed against Duncan.

## VI

■ As Langworthy's § 1983 claims must be dismissed, his § 1981 claims against Duncan must also be dismissed.

The Supreme Court has held in *Jett v. Dallas Independent School District*, that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Further, although Plaintiff makes a vague reference to the differences between his race and that of Dr. Goicochea, he has not made any concrete allegations of intentional discrimination by the Defendants against him. *See Roberson v. Bowie State University*, 899 F.Supp. 235 (D.Md.1995). Therefore Plaintiff has also failed to state a claim against any of the Defendants under § 1981.

## VII

Moreover, Plaintiff has failed to state a claim pursuant to § 1985 and 1986. In his Complaint, Plaintiff alleges that the Defendants have an "implied agreement to effect their combined nonfeasance in this case [that] has been so concerted, coordinated, deliberate and consistent so as to constitute a conspiracy against [him] in violation of 42 U.S.C. §§ 1985 and 1986." Amended Complaint at 14, ¶ 26. Plaintiff, however, has not plead any facts with particularity which indicate intentional discrimination on the basis of racial animus or any other class-based discriminatory animus on the parts of the Defendants. *See Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.1995). Nor has Plaintiff established that there was "an agreement or a 'meeting of the minds' by [the][D]efendants to violate [his] constitutional rights." *Id.* at 1377. Plaintiff has only made conclusory allegations of a conspiracy. He has not alleged with "specificity the time, place and effect of the conspiracy, including the nature of the agreement and overt acts in furtherance of

---

**6.** Further, Plaintiff's claims in Count II that Defendants Dean and Crane violated their constitutional duty to inform him his right to proceed as a private prosecutor is barred by qualified immunity. Plaintiff has not and cannot show any constitutional or statutory basis for this alleged duty. Therefore, Defendants did not violate any clearly established right by failing to inform him of his ability to present his case to the grand jury.

the conspiracy." Defendants Dean, Crane and Dudley's Memorandum in Support at 11. *See Gooden v. Howard County*, 954 F.2d 960, 970 (4th Cir.1992) (en banc). Therefore, he has failed to state a claim under § 1985. As the § 1985 claims must be dismissed, so too must the § 1986 claims. *See Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir.1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985.")

## VIII

As the Court is dismissing all of the Plaintiff's federal claims, it will also dismiss the pendent state tort claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Further, the Court will deny the numerous motions filed by Plaintiff. Plaintiff's Motion for Leave to Amend Complaint and Motion for Leave to File Third Amended Civil Rights Violations Complaint will be denied because the changes made by Plaintiff do not remedy the fatal flaws of his original complaint. Plaintiff's Motions to Invoke will be denied because they are not proper pleadings. These pleadings, including Plaintiff's Motion to Invoke the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.,* also contain claims which are not cognizable, and claims which misconstrue federal law. Plaintiff's Motion for Leave to File a Surreply Memorandum will be denied because that memorandum did not raise any new arguments. As the Court is dismissing this case, Plaintiff's other motions, which dealt with his technical violations of the Local Rules, will be denied as moot.

A separate Order consistent with this Opinion will follow.

## ORDER

Pursuant to the Memorandum Opinion, it is this 8th day of February, 1998, hereby **ORDERED:**

1. That Defendant Douglas M. Duncan's Motion to Dismiss [15–1] BE, and the same hereby IS, **GRANTED;**

2. That Defendants Dean, Crane and Dudley's Motion to Dismiss [18–1] BE, and the same hereby IS, **GRANTED;**

3. That Plaintiff's Motion for Leave to Amend Complaint [20–1], Motion to Invoke Americans with Disabilities Act [27–1], Motion to Invoke 42 U.S.C. § 1988 [34–1], and Motion to Invoke Convention Against Torture [36–1], Plaintiff's Motion for Leave to File Third Amended Civil Rights Violations Complaint [40–1] BE, and the same hereby ARE, **DENIED;**

4. That Plaintiff's Motion to Waive Highlighting [28–1], Motion to Suspend Local Rule 103.6 a [29–1], and Motions for Leave to File Surreply [30–1], and [33–1], BE and the same hereby ARE, **DENIED as moot;**

5. That the Clerk of the Court CLOSE this case, and

6. That the Clerk of the Court mail copies of the Memorandum Opinion and this Order to all counsel of record, including the *pro se* Plaintiff.